UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JANE DOE, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **THE COLISEUM, INC., et al.**, <br><br> Defendants. | **2:20-CV-10845-TGB-MJH** <br><br> HON. TERRENCE G. BERG <br><br><br> **MEMORANDUM OPINION & ORDER RESOLVING MOTIONS (ECF NOS. 59–63)** |

Now before the Court is a motion filed by Plaintiff Jane Doe 4 ("Doe") and four motions filed by Defendants Laurie Saad and Coliseum Detroit LLC ("Defendants"). ECF Nos. 59–63. Plaintiff asks the Court to compel Defendants' response to her discovery requests (ECF No. 59). Defendants seek (i) a stay of discovery (ECF No. 60); (ii) conditional leave to add a crossclaim (ECF No. 63); (iii) to compel arbitration of all remaining claims (ECF No. 62); and (iv) leave to amend their Answer (ECF No. 61). For the reasons stated below, Plaintiff's motion is **GRANTED IN PART**, and Defendants' motions are **DENIED**.

## I.  BACKGROUND

Plaintiff Doe 4 is a former dancer for the Coliseum, a Detroit-based strip club now owned and operated by Defendants [1] ECF No. 45,

---

[1] In previous Orders, the Court has used the terms "The Coliseum" or "Defendants" to refer to both the "Markovitz Defendants" (The Coliseum,

PageID.853–54. Doe alleges that during her tenure, Defendants established and enforced policies that violated the Fair Labor Standards Act ("FLSA"). ECF No. 24, PageID.249–52; ECF No. 65, PageID.1228.

In April 2021, the Court dismissed Doe's claims against the Markovitz Defendants after those parties entered a stipulation to arbitrate. ECF No. 20, PageID.208. Later that year, following an unsuccessful mediation, Doe and the Markovitz Defendants initiated arbitration. ECF No. 41, PageID.841.

Unbeknownst to Doe, in June 2020, Saad "purchased the 'name' Coliseum and liquor license from…Markovitz[.]" ECF No. 33, PageID.494. Upon learning of the ownership change in October 2021, Doe invited the new owner (now Defendants) to participate in arbitration. *Id.* Doe's counsel spoke with two attorneys claiming to reach out on Saad's behalf, although neither ever appeared before the Court or in the Markovitz arbitration proceedings. ECF No. 45, PageID.855. After repeated attempts, Doe's counsel managed to contact Saad. By that point, though, the message was clear—Defendants declined to arbitrate or be involved in this litigation in any other way. *Id.*

---

Inc. d/b/a The Coliseum, M&M Zin Enterprises, Inc. also d/b/a The Coliseum, and Alan Markovitz) as well as the "Saad Defendants" (Laurie Saad and Coliseum Detroit LLC, also d/b/a The Coliseum). Hereafter, unless specified otherwise, the term "Defendants" refers only to the Saad Defendants. Likewise, the term "Coliseum" will refer to Coliseum Detroit LLC.

Concluding that continued efforts at bringing Defendants into the arbitration process would be unsuccessful, in October 2022, Doe requested leave to add Coliseum Detroit LLC as a party to the suit, and the Court granted the request. ECF Nos. 23, 24.

On January 6, 2023, Doe moved for conditional certification and court-issued notice to similarly situated possible plaintiffs. ECF No. 32. Shortly after that, Doe requested further leave to file a Third Amended Complaint, and in March 2023, the Court granted the request to add Laurie Saad as a named party. *See* ECF Nos. 36, 44.

While Doe's motion for conditional certification was pending, the Sixth Circuit decided *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). In late May 2023, the Court ordered parties to file supplemental briefing on *Clark*'s effect on the law governing Doe's requested court-issued notice. *See* ECF Nos. 48–50.

Four months later, on September 30, 2023, the Court denied Doe's motion for conditional certification without prejudice. *See* ECF No. 55. In the same order, the Court ruled that equitable tolling would be applied and instructed the parties to engage in expedited discovery. *Id.* at PageID.1026.

At a telephonic status conference in early November 2023, set to discuss the expedited discovery schedule, Defendants told the Court that they had recently parted ways with prior counsel. Defendants' new counsel, at the conference, represented to Plaintiff and the Court their

3

intention to address Doe's expedited discovery requests posthaste. Citing a need, though, to learn about the case, Defendants' new counsel asked for a 30-day extension of each expedited discovery deadline. With Doe lodging no objection, the Court granted Defendants' request.

Despite the extra time allotted, Defendants "failed to provide anything responsive" to Doe's discovery requests for the rest of the year. Doe's entreaties for firm deadlines and updates on Defendants' responses likewise went unanswered. ECF No. 59, PageID.1045. Eventually, Defendants informed opposing counsel that they had no intention of producing deponents or engaging in discovery. *Id.* Instead, Defendants advised Doe that they would soon move the Court to stay the case because they were demanding enforcement of an arbitration clause in Doe's contract. *Id.* As a result, on December 29, 2023, Doe filed a motion to compel Defendants' compliance with Plaintiff's expedited discovery requests. *See id.* at 1035.

In support of their position, Defendants submit a single-page "Performance Contract" between The Coliseum Detroit and Doe containing two pertinent provisions: (i) an affirmation by the applicant of the applicant's status as an independent contractor and (ii) an arbitration provision. These terms provide as follows:

> I certify that I have been informed and understand that by submitting this application, I am seeking to enter into a contract by which I agree to perform at THE COLISEUM DETROIT and THE COLISEUM DETROIT agrees to provide

the venue in which I perform, as an independent contractor and not as an employee.

***

I agree that any dispute arising under this document shall be promptly submitted to and heard and determined by the American Arbitration Association pursuant to its commercial arbitration rules in effect at the time of any dispute. The determination of the arbitrator shall be binding on the parties, shall not be appealable, and judgment on the award rendered may be entered in any court having jurisdiction on the matter. The prevailing party (as determined by the arbitrator) shall be entitled to recover from the other party all costs and expenses (including but not limited to attorney fees) incurred in enforcing its rights under the arbitration process.

ECF No. 62-1, PageID.1178.

Relying on these provisions, Defendants demand that Doe's claims be referred to arbitration. In pursuit of that demand, on January 4, 2024, Defendants filed the below pending motions:

1. Motion for Protective Order to Stay Discovery Pending Decision on Motion for Leave and to Compel Arbitration (ECF No. 60)

2. Motion for Leave to File an Amended Answer, Add Affirmative Defense of Arbitration (ECF No. 61)

3. Motion to Stay Proceedings & Compel Arbitration (ECF No. 62)

4. Motion for Leave to Partially Lift Stay & Permit Leave to Amend Answer to add Crossclaim against M&M Zin Enterprises, Inc. and Alan Markovitz [Under] Rule 13 (ECF No. 63).

Following the submission of Defendants' motions, the Court ordered parties to appear for another telephonic status conference on January 10, 2024. ECF No. 64. At the conference, Defendants informed the Court and Plaintiff they were of the opinion that expedited discovery should be paused until after a decision is made on the arbitration-related motions. The Court remarked that it understood their legal arguments, and it cautioned Defendants that these arguments did not permit disregard of the Court's order. The Court instructed Defendants to comply with Doe's discovery requests within two weeks.

## II.   LEGAL STANDARD

Because arbitration agreements are "simply contracts," *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024), courts are to "rigorously enforce the agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate contained within contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract[.]" 9 U.S.C. § 2 (emphasis added). To deem a valid arbitration agreement to exist is to make two distinct statements: (i) an agreement to arbitrate was concluded—in other words, arbitration, at least to some extent and in some cases, was agreed upon; and (ii) this "actually existing" agreement is legally binding—"valid," rather than void. *Ross v. Nissan of N. Am.*,

6

*Inc.*, No. 3:22-CV-00830, 2024 WL 1401335, at *2 (M.D. Tenn. Mar. 31, 2024).

When asked to compel arbitration under a contract, "it is a court's responsibility to determine…[if] the parties agreed to arbitrate their dispute." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021); *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). Put differently, challenges to an arbitration agreement's formation—"whether [the agreement] was, in fact, agreed to by the parties"—are presumptively subject to court disposition. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

## III.   DISCUSSION

The arguments presented in Defendants' concurrent motions overlap considerably and so will be addressed and resolved collectively. In essence, the motions contend (a) the parties intended to arbitrate any dispute regarding Doe's tenure at Defendants' establishment; (b) Doe's claims fall squarely within the scope of the contract's arbitration agreement; and (c) Defendants have not waived their arbitration rights.[2] *See* ECF No. 66, PageID.1321.

---

[2] Defendants present an additional line of argument: In January 2024, when the pending motions were filed, Doe was "arbitrating identical issues with [Markovitz] and discovery in that matter [was] still open." ECF No. 62, PageID.1174. Defendants assert that, with "no discovery hav[ing] taken place[,] [compelling arbitration] makes sense[—]not only

Until a motion to compel arbitration is resolved, other matters, including those merit-based, are not to be addressed. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 844 (6th Cir. 2021).

## A. Delegation

An arbitration agreement need not *exclusively* manifest the parties' intent to refer the merits of their disputes for arbitration. Parties may also contractually agree that—if a valid arbitration agreement exists—"an arbitrator, rather than a court, will resolve threshold arbitrability questions[.]" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (discussing two such 'gateway' questions of 'arbitrability': (i) did the parties agree to arbitrate and (ii) whether a concededly binding agreement covers a particular controversy); *see also Harrison v. Gen. Motors LLC*, 651 F. Supp. 3d 878, 884 (E.D. Mich. 2023) (recognizing "whether [a particular individual or entity] may enforce an arbitration agreement" to be another "gateway" question). But "[t]he issue of [a] contract's validity is different from the issue [of] whether any agreement between the alleged obligor and obligee was ever concluded." *Jonna v. Latinum,* No. 22-10208, 2024

---

from a judicial economy perspective but also to avoid inconsistent outcome[s]." *Id.* Moreover, Defendants suggest, the "very minimal discovery" warranted would "not delay the [Markovitz] arbitration." *Id.* This argument is moot. On July 3, 2024, the Court approved and adopted a settlement agreement reached by Jane Doe 4 and the Markovitz Defendants (ECF No. 71), whereby all claims levied against the latter were dismissed with prejudice. *Id.* at PageID.1596.

WL 3029505 (E.D. Mich. June 17, 2024) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)).

A "primary dispute" is one about the merits of the core controversy between the parties. Such a primary disagreement hinges on the applicable law and relevant facts of the case. *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192–93 (2024) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Additionally, parties might have secondary and tertiary disputes. The secondary dispute concerns whether the parties agreed to arbitrate the merits of the lawsuit, while the tertiary dispute addresses who should have the authority to decide that secondary question. These second- and third-order questions are also based on consent principles. As such, "[j]ust as the arbitrability of the merits depends upon whether the parties agreed to arbitrate that dispute," determination of "'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Coinbase, Inc.*, 144 S. Ct. at 1193 (citations omitted) (emphasis in original). "[W]e…address[] three layers of arbitration disputes: (1) merits, (2) arbitrability, and (3) who decides arbitrability." *Id.* And, "[a]s always, traditional contract principles apply." *Id.*

Under the "so-called severability principle[,]" an arbitration agreement or delegation provision is severable from the rest of the contract. *Id.* at 1194. Courts will uphold a delegation of threshold arbitrability questions (i.e., third-order questions) so long as the parties'

arbitration agreement demonstrates their intention to do so by "clear and unmistakable" evidence. *First Options*, 514 U.S. at 944; *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) ("A valid delegation [provision] precludes courts from resolving any threshold arbitrability disputes."); *see, e.g.*, *Simpson v. Nissan of N. Am., Inc.*, No. 3:22-CV-00747, 2023 WL 5120240 (M.D. Tenn. Aug. 9, 2023) (citing *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019)).

Notably, "[o]nly a *specific* challenge to a delegation [provision] brings arbitrability issues back within the court's province." *Cunningham v. Ford Motor Co.*, No. 21-CV-10781, 2022 WL 2819115 (E.D. Mich. July 19, 2022) (Leitman, J.) (citing *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (emphasis added); *see also Rent-A-Center*, 561 U.S. at 72 (explaining that "unless [a party] challenge[s a] delegation provision specifically," then "any challenge to the validity of [an arbitration agreement] as a whole" must be left for the arbitrator). Challenges to a delegation provision may appear "in the form of a coverage challenge or as an enforceability challenge[;] [r]egardless, the outcome is the same: a valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022).

Even so, no delegation provision may relieve the Court of its initial inquiry duty—that is, its responsibility to ask (and answer) whether a valid agreement to arbitrate exists. *See Henry Schein, Inc. v. Archer &*

*White Sales, Inc*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, a court determines whether a valid arbitration agreement exists."); *Becker*, 39 F.4th at 355 ("[Q]uestions pertaining to formation are reserved for the court's province, [even]…in the presence of a valid delegation clause."); *Boykin*, 3 F.4th at 843 ("The duty to arbitrate stems only from a party's consent.").

In May 2024, the Supreme Court expanded upon this concept, clarifying that the severability principle does not require challenges be limited "only" to the arbitration agreement or delegation provision. *Coinbase, Inc.*, 144 S. Ct. at 1194. These agreements and provisions are themselves contracts, and typically, when a contract is claimed to be invalid, the Court must address the claim before ruling on the contract's merits. When a challenge may be considered applicable "equally" to the entire contract and the arbitration agreement or delegation provision, it is the Court's responsibility to consider the challenge. 144 S. Ct. at 1194 (internal citation omitted).

In pursuit of an answer, the Court looks partly to state law to "apply ordinary…principles govern[ing] the formation of contracts." *First Options*, 514 U.S. at 944. As relevant here, Michigan contract law provides the Court with a recognizable enough, and somewhat intuitive, framework. For instance, arbitration is considered a matter of contract, *Kaleva-Norman-Dickson Sch. Dist. No. 6, Ctys. of Manistee, Et Al. v. Kaleva-Norman-Dickson Sch. Teachers' Ass'n*, 227 N.W.2d 500 (Mich.

1975); and the general policy of Michigan favors arbitration, *City of Detroit v. A.W. Kutsche & Co.*, 16 N.W.2d 128 (Mich. 1944).

Michigan contract law stresses that the Court's primary undertaking is to establish the intent of Defendants and Doe when they entered into the agreement. *See Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95 (Mich. 2014). To evaluate the parties' intent and the veracity of Defendants' position, the Court must examine the "plain and ordinary" meaning of the language used in the agreement. *Id.*

The delegation provision within Doe's arbitration agreement reads:

> I agree that any dispute arising under this document shall be promptly submitted to and heard and determined by the American Arbitration Association pursuant to its commercial arbitration rules in effect at the time of any dispute.

ECF No. 62-1, PageID.1178.

The Federal Arbitration Act ("FAA") and Michigan state law are amenable to the incorporation of arbitration provisions by reference. *See Altobelli v. Hartmann*, 884 N.W.2d 537, 539–40, 547–48 (Mich. 2016); *C.f. Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (incorporating outside documents into a contract is a long-established and accepted principle of contract law); *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020) (approving of the doctrine of incorporation by reference and defining it as "[a] method of making a secondary document part of a primary document by including

in the primary document a statement that the secondary document should be treated as if it were contained in the primary one"). "[A]mbiguities in the language of an agreement should be resolved in favor of arbitration;" yet courts should not "override the clear intent of the parties or reach a result inconsistent with the plain text of the contract [to produce an ambiguity.]" *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).

On remand from the Supreme Court, the Fifth Circuit applied the same reasoning when facing a comparable agreement and provision. *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 277 (5th Cir. 2019). In that case, the contract provided:

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [entity]), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association ("AAA").

*Id.*

The *Archer & White* panel determined that the most natural reading of the provision was that any dispute—save injunctive relief actions—was to be resolved in arbitration per the AAA rules. "The plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes except those under the carve-out." *Id.* at 282. The parenthetical exception would be a fatal flaw: "Given that carve-

out, [the Fifth Circuit] [could not] say that the Agreement evinces a "clear and unmistakable" intent to delegate arbitrability." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281–82 (5th Cir. 2019).

The Sixth Circuit has determined that incorporation of the AAA Rules within an arbitration agreement is itself "clear and unmistakable evidence" of an agreement by the parties to delegate issues of arbitrability—as those rules "clearly empower an arbitrator to decide questions of 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020) (pointing to *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377 (6th Cir. 2020) and *McGee v. Armstrong*, 941 F.3d 859 (6th Cir. 2019) as recent Circuit precedent "counsel[ing]—and perhaps—compel[ling]" its holding); *see also* American Arbitration Association Rule 7(a) ("[An] arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement[.]").

In our case, the delegation provision within Doe's performance contract is clear. It states plainly that "disputes arising under" the contract are to be "determined by the American Arbitration Association pursuant to its commercial arbitration rules in effect at the time of any dispute." This language unambiguously delegates to an arbitrator all threshold questions of arbitrability.

Doe does not appear to contest the existence or validity of the performance contract. Instead, she asserts that her particular claims are

14

carveouts not subject to arbitration. But that is irrelevant. "To the extent that [Doe's] arbitration agreement carves out certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA Rules." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020). Any such "carveout goes to the *scope of the agreement*—a question delegated by the agreement to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of 'arbitrability.'" *Id.* (emphasis in original).

On the question of delegation, therefore, the Court concludes that the parties' agreement included a provision delegating the question of arbitrability to the arbitrator.

### B. Waiver

But this does not end our inquiry, as a party may waive its arbitration rights. Doe contends that Defendants, by engaging extensively in this litigation without invoking the arbitration agreement until this point, have effectively waived their right to arbitration. Notwithstanding the above arbitrability decisionmaker analysis, this Circuit has expressly held that "the court, not the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement." *Doe v. Piraino*, Case No. 3:22-CV-00560, 2024 WL 1421253, at *10 (M.D. Tenn. Apr. 2, 2024) (quoting *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008).

Though this precedent makes clear which legal forum is responsible for deciding the question of waiver, the correct procedure for making that decision is "presently somewhat unresolved." *Piraino*, 2024 WL 1421253, at *5.

In 2022, the Supreme Court altered the analysis employed by most circuits to determine whether a party waives its arbitration rights by participating in litigation. *Morgan v. Sundance*, 596 U.S. 411, 414 (2022). The Court reiterated that arbitration agreements should be "as enforceable as other contracts, but not more so." *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 404, n.12 (1967). Accordingly, "[i]f an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Morgan*, 596 U.S. at 416.

Before *Morgan*, the precedent in the Sixth Circuit held that a party waives arbitration when it (i) takes actions "completely inconsistent" with any reliance on an arbitration agreement and (ii) delays its assertion to a degree that causes "actual prejudice" to the opposing party. *Morgan,* 596 U.S. at 414; *see O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003). After *Morgan*, however, the Sixth Circuit in *Schwebke v. United Wholesale Mortg. LLC* determined the second prong must be removed: courts need no longer require a showing that a party's delay caused prejudice before finding a waiver of the right to arbitrate. 96 F.4th 971, 974 (6th Cir. 2024).

Because the *Schwebke* litigants agreed that the Circuit's pre-*Morgan* caselaw remained valid "once stripped of its prejudice requirement," the panel "assume[d] without deciding" that its precedent on the first prong—addressing actions 'completely inconsistent' with reliance on arbitration—survived. 96 F.4th at 974–75. Likewise, the *Morgan* court acknowledged that "[t]he Courts of Appeals…have generally resolved [similar] cases…as[] matters of federal law, using the terminology of waiver[, and also] assume[d] without deciding they are right to do so." *Morgan*, 596 U.S. at 416. The panel analogized the dispute to another "very similar" case decided by the Sixth Circuit—*Johnson Assocs. Corp. v. HL Operating Corp.*—which it deemed "largely determin[ative] [of] the outcome here." 96 F.4th at 975.

In *Johnson Assocs.*, the defendant had moved for and was granted an extension of time to file an Answer; asserted ten affirmative defenses; asserted a counterclaim; engaged in informal efforts to resolve the case and a judicial settlement conference; unilaterally (and jointly with the plaintiffs) sought case management scheduling adjustments; and served discovery requests. 680 F.3d at 716. The panel found that, even if no single circumstance showed that the defendant had acted entirely inconsistently with its right to arbitration, when viewed collectively, they did. *Id.* at 719.

Adapting this 'totality-of-the-circumstances' analysis in *Schwebke*, the circuit court noted that its defendant engaged in conduct similar to

that of the defendant in *Johnson Associates*. For example, the *Schwebke* defendant:

> [W]aited seven months before moving to compel arbitration; did not raise arbitration as an affirmative defense; raised other affirmative defenses; participated in a discovery conference; filed a joint discovery plan; served interrogatories and requested documents; noticed two depositions; and agreed to an extension of the discovery deadline.

96 F.4th at 975.

This conduct went far beyond what the court found sufficient in *Johnson Associates* to establish the defendant's waiver; in the latter, "no discovery responses had been exchanged, and no depositions had been taken." *Id.* (quoting *Johnson Assocs. Corp. v. HL Operating Corp.*, No. 3:09-CV-01206, 2010 WL 4942788, at *1 (M.D. Tenn. Nov. 30, 2010), *aff'd*, 680 F.3d 713 (6th Cir. 2012)). By participating in extensive discovery and litigating the case for over seven months, the *Schwebke* defendant had acted completely inconsistent with reliance on its arbitration right, thereby implicitly waiving any right to compel arbitration. 96 F.4th at 976–77.

Following *Morgan* and *Schwebke*, district courts within the Sixth Circuit appear to have reached a consensus: If, considering the totality of the circumstances, a party acts in a manner "completely inconsistently" with their recently asserted right to arbitration, they have waived that right. *Jonna v. Latinum,* No. 22-10208, 2024 WL 3029505 (E.D. Mich.

June 17, 2024), at *7; (offering cases in Tennessee, *Piraino*, 2024 WL 1421253, Ohio, *Adelstein v. Walmart Inc.*, No. 1:23-CV-00067, 2024 WL 1347043 (N.D. Ohio Mar. 30, 2024), at *5, and Michigan, *Kloosterman v. Metropolitan Hospital*, No. 22-00944 (W.D. Mich. Oct 11, 2022), as examples).

Yet courts engaging in these totality-of-the-circumstances analyses continue to "reach[] different results in somewhat similar circumstances." *Jonna*, 2024 WL 3029505, at *8 (comparing cases); *see also Madison Dist. Pub. Sch. v. Myers*, 637 N.W.2d 526, 529 (Mich. Ct. App. 2001) (decisions on waiver of arbitration rights depend on the circumstances of each case).

And understandably so. The FAA provides no concrete guidance. *Cobble v. T-Mobile Sprint*, No. 3:21-CV-000415, 2024 WL 1251339, at *7 (W.D. Ky. Mar. 22, 2024) ("[T]he FAA does not define what constitutes a 'default in proceeding with such arbitration,' [y]et the Sixth Circuit has implicitly treated the default element of § 3 as a party's waiver of its contractual right to arbitration, usually by its delay in seeking the enforcement of an arbitration agreement."). Nor has the Supreme Court established a particular rule or standard to apply. *Piraino*, 2024 WL 1421253, at *5; *Morgan*, 596 U.S. at 416 (acknowledging disagreement "about what role state law may play in determining when a party's litigation conduct results in the loss of a contractual right to arbitrate, [and regarding] whether to understand the inquiry as involving rules of

waiver, forfeiture, estoppel laches, or procedural timeliness," though leaving them unresolved).

In the absence of any uniform directive, courts consider a "non-exhaustive list of factors" when making these determinations, including the (i) extent of pretrial litigation, (ii) duration of the delay before requesting arbitration, (iii) filing of pretrial motions, (iv) involvement in litigating issues on the merits, and (v) extent of discovery conducted. *Jonna*, 2024 WL 3029505, at *8.

The Court, now undertaking its own waiver analysis, notes that Defendants have engaged in the following conduct:

- Filed a stipulation to extend time to respond to the second amended complaint. ECF No. 28.

- Answered the second amended complaint (without asserting arbitration as a defense). ECF No. 31.

- Filed a response to the first motion for conditional certification. ECF No. 33.

- Replied to the motion for leave to file a third amended complaint. ECF No. 38.

- Answered the third amended complaint. ECF No. 47.

- Filed a response to plaintiff's supplemental briefing. ECF No. 49.

- Filed a response to plaintiff's motion for equitable tolling and immediate commencement of discovery. ECF No. 53.

- Participated in expedited discovery and produced over 400 pages of responsive documents and responses. *See* ECF No. 55.

- Participated in a case management conference. *See* ECF No. 56.

- Requested, and was granted, discovery deadline extensions.

The kind of conduct Defendants have engaged in here has been interpreted by courts as indicative of waiver. After months of litigation, Defendants only now seek to compel arbitration, despite this case having already advanced to discovery and involved extensive motion practice. Whether federal or Michigan law controls, the outcome is the same. Michigan has largely adopted the Uniform Arbitration Act, MCL § 691.1681–713, which is "almost identical to the FAA in all relevant respects[.]" *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 716 (6th Cir. 2014).

Defendants maintain that their participation in the litigation thus far and any delay in asserting their arbitration rights are excusable—they say that, until recently, Doe's identity remained a mystery to them.

But, as Defendants concede, they learned in late 2021 Doe was claiming Coliseum Detroit LLC as a successor entity to M&M. ECF No. 62, PageID.1163. And in January 2022, Doe's counsel provided Defendants with Doe's *actual* name while at the same time inviting Defendants to participate in the then-ongoing arbitration between Doe

and M&M. *Id.* at PageID.1164. Defendants offer the explanation that, mistaking Doe's *actual* name for her *stage* name, Defendant Laurie Saad's husband "inquired with key staff whether [Doe] ever performed there[,] [a]ll those asked affirmatively stated that nobody by that name had[.]" *Id.* at PageID.1164. At that point, Defendants say they believed there were multiple reasons to decline to participate in the arbitration between Plaintiffs and M&M: (1) they were not part of a civil suit; (2) they "confirmed" Plaintiff did not perform at their establishment; (3) they were shocked that M&M hid the suit from them; and (4) they "knew" they were not responsible as a successor entity. *Id.*

Over a year later, in late November 2023, Defendants became aware of Doe's *stage* name. Evidently, Defendant Saad went to the Coliseum to investigate, at which point she "found blank performance contracts…[each] contain[ing]…an arbitration clause[.]" When Saad inquired about the forms, "she was told performers sign them." "Ultimately, filed away[,] a contract [Doe] signed was found." ECF No. 62, PageID.1165–66.

The Court rejects Defendants' paltry excuse here. First, as is evident from a review of the performance contracts at issue, the forms required dancers to include their real name and stage name; there was a line for both. Once Defendants learned of a potential employment claim involving a person alleged to be an employee, they had an obligation to look into the matter with reasonable thoroughness. It makes no

difference if Defendants mistook Doe's real name for her stage name because the performance contracts included both. Had Defendants done their due diligence—including examining potentially relevant documents stored at the establishment *that they own*—the contract containing the arbitration clause would have been quickly found. Indeed, according to Defendants, each of their blank performance contracts contain such a clause. Defendants were in a position to invoke the arbitration clause before they were even brought into this litigation. Instead, Defendants waited nearly two years, if not longer, to raise arbitration in any substantive or meaningful way.

By acting completely inconsistently with reliance on a right to arbitrate, Defendants have waived whatever right they may have had under Doe's performance contract.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Proceedings & Compel Arbitration (ECF No. 62) and Defendants' Motion for Leave to File an Amended Answer, Add Affirmative Defense of Arbitration (ECF No. 61) are **DENIED**.

Defendants' Motion for Protective Order to Stay Discovery Pending Decision on Motion for Leave and to Compel Arbitration (ECF No. 60) is **DENIED AS MOOT**.

Defendants M&M Zin Enterprises, Inc. and Alan Markovitz have been dismissed with prejudice from this case. Therefore, Defendants'

Motion for Leave to Partially Lift Stay & Permit Leave to Amend Answer to add Crossclaim against M&M Zin Enterprises, Inc. and Alan Markovitz Under Rule 13 (ECF No. 63) is likewise **DENIED AS MOOT.**

After hearing oral arguments on Plaintiff's Motion to Compel (ECF No. 59) during the January 10 telephonic status conference, the Court ordered Defendants to comply with Plaintiff's expedited discovery requests. Therefore, the Court deems Plaintiff's motion (ECF No. 59) **GRANTED IN PART**.

**SO ORDERED.**

Dated: 9/30/2024            s/Terrence G. Berg
                           _____
                           TERRENCE G. BERG
                           UNITED STATES DISTRICT JUDGE