UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JANE DOE, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **THE COLISEUM, INC., et al.**, <br><br> Defendants. | **2:20-CV-10845-TGB-MJH** <br><br> HON. TERRENCE G. BERG <br><br> **OPINION & ORDER AUTHORIZING NOTICE TO POTENTIAL PLAINTIFFS (ECF NO. 67)** |

Now before the Court is Plaintiff's Renewed Motion for Issuance of Court Supervised Notice. ECF No. 67; *see* 29 U.S.C. § 216(b). The background facts are set forth in detail in the Court's prior and concurrent Opinions and Orders. *See, e.g.,* ECF No. 55. Therefore, the Court will not repeat those facts in full here. Instead, it will only recite those facts material to this motion and in context.

Plaintiff Jane Doe 4 ("Doe") asks the Court to supervise notice to a proposed collective of exotic dancers that work or previously worked at the Coliseum Detroit, under Defendant Coliseum Detroit LLC and Defendant Laurie Saad's ownership ("Defendants"). Defendants acknowledge these dancers were or are (i) not paid a minimum wage, (ii) not paid as employees, and (iii) classified as independent contractors. *See* ECF No. 67-2. For the reasons stated below, Plaintiff's motion will be **GRANTED IN PART and DENIED IN PART**.

## I.   LEGAL STANDARD

The FLSA permits employees to bring suit for violations of the statute on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). But a potential plaintiff may only join an FLSA collective action if they "give[] [their] consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Accordingly, a court may facilitate notice of a putative FLSA collective action so that potential plaintiffs may "opt-in" to the suit. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). This distinct "opt-in" structure heightens the need for any appropriate individuals to "receiv[e] accurate and timely notice concerning the pendency of the collective action" so that they may decide whether to participate in the litigation. *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 WL 2957741, at *2 (S.D. Ohio July 11, 2017) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). The decision whether to conditionally approve a collective action, "and thereby facilitate notice, is thus within the discretion of the trial court." *Id.* (citing *Snelling v. ATC Healthcare Services, Inc.*, No. 2:11-CV-983, 2012 WL 6042839, at *2 (S.D. Ohio Dec. 4, 2012)).

At the notice stage of an FLSA action, "district courts within the Sixth Circuit typically do not consider the merits of [a] plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214

2

(S.D. Ohio 2011); *see also Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010). A court's primary concern when contemplating the facilitation of notice, therefore, "is whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather than personal, evidence." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019).

"[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are 'similarly situated' to the plaintiffs themselves."[1] *Clark*, 68 F.4th at 1011. The 'strong likelihood' standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*

"This 'strong likelihood' of similarity is satisfied when a plaintiff alleges a single FLSA-violating policy, 'and…proof of that policy[,] or of conduct in conformity with that policy[,] proves a violation as to all the plaintiffs.'" *Rayford v. Mobile Phlebotomy of Cent. Michigan LLC*, No. 1:23-CV-13012, 2024 WL 1435211, at *2 (E.D. Mich. Apr. 3, 2024)

---

[1] "The very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1012 (6th Cir. 2023).

(quoting *Dove v. Corewell Health*, No. 1:23-CV-182, 2023 WL 6548556, at *2 (W.D. Mich. Oct. 6, 2023)). Plaintiffs can also meet their burden of demonstrating 'similar situatedness' "by showing that their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct[;] [i]n other words, [p]laintiffs are not required to show a 'unified policy' of violations[—][t]hus, they do not have to show that a violation as to one particular plaintiff means that defendant violated any other plaintiff's rights under the FLSA." *Heeg v. United Elec. Contractors, Inc.*, No. 1:21-CV-796, 2023 WL 7295153, at *16 (W.D. Mich. Nov. 6, 2023); *see also Piddock v. Cmty. Living Network*, No. 22-CV-10715, 2024 WL 2235604, at *3 (E.D. Mich. May 15, 2024) (Levy, J.). The Sixth Circuit—acknowledging that the facts and record of an action[2] may not yet be fully developed at the notice-determination stage—"has explained that…movant[s] merely must 'demonstrate to a certain degree of probability' that [they] will prove…the employees are 'similarly situated' when the court issues its final decision." *Hogan v. Cleveland Ave Rest., Inc.*, 690 F. Supp. 3d 759, 772 (S.D. Ohio 2023) (quoting *Clark*, 68 F.4th at 1011).

---

[2] "[F]actual showings [at this stage] may [also] include affidavits of potential plaintiffs or evidence of a widespread policy or plan." *Petty v. Russell Cellular, Inc.*, No. 2:13-CV-1110, 2014 WL 1308692, at *2 (S.D. Ohio Mar. 28, 2014).

The Court, therefore, may "provide notice to employees who *might* be similarly situated to the original plaintiffs, and who thus might be eligible to join the suit." *Bryant v. Domino's Pizza*, No. 22-11319, 2024 WL 1638616, at *4 (E.D. Mich. Apr. 16, 2024) (Michelson, J.) (emphasis in original) (internal citations omitted). "[L]ater, when the record is more developed, the Court [is to] make a 'final similarity determination.'" *Heeg*, 2023 WL 7295153, at *5.

Although the FLSA itself does not define "similarly situated," district courts have tended to consider a number of factors. *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d 622, 628 (S.D. Ohio 2023). Included most frequently among these are "[1] the factual and employment settings of the individual[] plaintiffs, [2] the different defenses to which the plaintiffs may be subject on an individual basis, [3] the degree of fairness and procedural impact of [approving] the…collective action[.]" *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).

## II.   SIMILAR SITUATEDNESS

Doe alleges that Defendants have willfully maintained FLSA-violating policies and practices respecting all Coliseum dancers and that Defendants have "acted neither in good faith nor with reasonable grounds to believe that their actions and omissions [are] not [in] violation of the FLSA[.]" ECF No. 24, PageID.258. Doe contends:

- Defendants misclassify their dancers as independent contractors when the dancers work as employees and, as a result, violate the FLSA by not paying these employees. Doe seeks relief on a collective basis challenging Defendants' practice of failing to pay employees federal minimum wage.

*Id.* at PageID.252, 256–58; *see, e.g., Rayford*, 2024 WL 1435211, at *3.

- Defendants require their dancers to "kick back a portion of their tips received to the managers, bouncers, disc jockeys, and house mothers," and "other employees of The Coliseum who did not work in positions that are regularly tipped, in violation of 29 U.S.C. § 203(m)."[3]

*Id.* at PageID.250, 257; *see* Pl.'s Decl., ECF No. 67-3, PageID.1376; *see also* 29 C.F.R. § 531.35.

"As a result of the willful violations of the FLSA's…provisions[,]" Doe asserts, "Defendants are liable under 29 U.S.C. § 216(b), together

---

[3] "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

with an additional amount as [to] liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of th[e] action." ECF No. 24, PageID.258. Proof of either policy or Defendants' conforming conduct would therefore "prove an FLSA violation as to *all* members of the proposed collective[.]" *Rayford*, 2024 WL 1435211, at *3. (emphasis added).

Here, consideration of the factors above favors finding that Plaintiff has demonstrated a strong likelihood that she is similarly situated to the proposed collective of Coliseum Detroit LLC's exotic dancers.

## A. Factual and Employment Settings

Defendants ask the Court to consider a different set of factors in determining whether there is a strong likelihood of similar-situatedness, including whether plaintiffs "(1) held the same position with the same job description and duties; (2) worked in the same geographic locations; (3) had the same supervisors; and (4) were subject to the same timekeeping compensation policies." ECF No. 68, PageID.1558–59 (citing *Pierce*, 922 F.3d at 745 and *Clark*, 68 F.4th at 1011). These factors sound nice and may be practical measures for similar-situatedness, but they are nowhere found in the *Pierce* or *Clark* opinions by the Sixth Circuit, as cited by Defendants. Whether another court may have articulated them is unknown, as Defendants leave no traceable clue as to their source.

But even if the factors generated by Defendants were legally correct, Plaintiff meets them. Defendants concede that "[h]ere, Plaintiff

and all potential opt-in dancers each signed the same independent contractor agreement[;] they also danced at the same location[—][t]heir employment status[,] therefore[,] would seem to be identical and arguably collectively determined." ECF No. 68, PageID.1558–59. In that respect, at least, the Court agrees with Defendants. But Defendants also insist "that is only part of the equation[:] Hours worked, including overtime, regarding one dancer is…wholly independent as it relates to any other particular dancer[;] [t]hus, there is no common theory between Plaintiff and the proposed opt-ins concerning whether they worked certain shifts or any amount of hours in any given week, including whether a dancer even worked overtime." ECF No. 68, PageID.1559.

This argument—that Plaintiff and any additional opt-in plaintiffs would need to show that they worked the same shifts, hours, and overtime—finds no support in the law. That Defendants fail to provide a single citation in support of this assertion is unsurprising; it is entirely devoid of merit. "Two governing principles from our caselaw serve as guides: plaintiffs do not have to be 'identically situated' to be similarly situated, and the FLSA is a remedial statute that should be broadly construed." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 402 (6th Cir. 2017). The Sixth Circuit "has specifically noted that the FLSA 'must not be interpreted or applied in a narrow, grudging manner.'" *Johnson v. Koch Foods, Inc.*, 657 F. Supp. 2d 951, 956 (E.D. Tenn. 2009) (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 144 (6th Cir. 1977)). "Notably, even

8

at the decertification stage, *similarly* situated does not mean *identically* situated." *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006), *aff'd,* 278 F. App'x 488 (6th Cir. 2008) (emphasis in original).

## B. Individualized Defenses

Unfortunately, Defendants continue to invite the Court onto a detour from the applicable law. "The next factor," Defendants say, "is the extent to which defenses *appear* to be individual to each opt-in." Defs.' Resp., ECF No. 68, PageID.1559–60 (emphasis in original) (citing *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *7 (M.D. Tenn. Sept. 26, 2006), *aff'd,* 278 F. App'x 488 (6th Cir. 2008)).[4] Defendant then asserts

---

[4] *Wilks* addresses an employer's argument that individualized defenses will make the case difficult to defend and then rejects that argument. Were Defendants to read the page preceding that cited in *Wilks*, they would have noted the court's support for a position entirely antithetical to Defendants' own:

> Accordingly, the court finds that, on balance, the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected. *See Hill v. Muscogee Cnty. Sch. Dist.*, No. 4:03-CV-60 (CDL), 2005 WL 3526669 (M.D. Ga. Dec. 20, 2005), at *2–*4 (refusing to decertify a class of plaintiffs despite the defendant's contention that they had "different job duties, different hours worked, different allegations about the manner in which they were denied pay, and different supervisors," where a fact-finder could conclude that the defendant subjected the plaintiffs to a common practice, i.e., it told all of them to work no more than forty hours per week but then assigned more

9

"[t]he presence of many individualized defenses makes a representative class unmanageable." ECF No. 68, PageID.1560 (citing *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV.A. 06-299-JBC, 2008 WL 2885230, at *9 (E.D. Ky. July 22, 2008)). But *Crawford* does not make that assertion on the page cited by Defendants. Rather, it points out that, in the context of a motion to decertify a collective suit, "the district court has the discretion to determine whether the potential defenses would make the class unmanageable." *Id.*

Defendants profess that they "will advance individual defenses[,] such as…collective member testimony regarding wages and overtime is incredible and vague because time records were not kept[,] and…calculating damages is speculative since time records were not kept[.]" ECF No. 68, PageID.1560. Accordingly, Defendants maintain, each opt-in will, allegedly, be subject to these defenses, "making a representative class unmanageable." *Id.* But as the Sixth Circuit

work than could reasonably be completed in that time and trusted that, as conscientious employees, they would get the work done, even if completing their duties meant working overtime); *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000) (finding that, irrespective of the differences in the plaintiffs' "job duties, geographic assignments and hourly billing rates," collective treatment was appropriate where each plaintiff asserted a common claim, i.e., that he or she was wrongfully deprived of earned overtime pay).

*Wilks*, 2006 WL 2821700, at *6.

explained in *Monroe*, Defendants' lack of record-keeping offers no refuge and is no basis for claiming that Plaintiff's case is unsupported:

> In the absence of accurate employer records, both Supreme Court and Sixth Circuit precedent dictate that the burden…shifts to the employer to "negative the reasonableness of the inference to be drawn from the employee's evidence" and, if it fails to do so, the resulting damages award need not be perfectly exact or precise. [*Anderson v.*] *Mt. Clemens*, 328 U.S. [680,] 687–88 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA].")[.]

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017).

As for any assertion by Defendants that Plaintiff and the members of the prospective collective are subject to individualized arbitration under the Performance Contract (ECF No. 65-6, PageID.1287), the Court has deemed this affirmative defense waived for the reasons provided in its concurrent Order.

## C. Fairness & Procedural Impact

"In considering the final factor," Defendants continue, "the Court examines whether proceeding collectively will comport with the purpose of the FLSA that is intended to permit consolidation of many related small claims that would otherwise be too costly to pursue individually." ECF No. 68, PageID.1560 (citing *Monroe*, 860 F.3d 389).

Defendants' paraphrasing of *Monroe* is inexact. It omits the explanation offered by the parenthetical citation immediately following their chosen excerpt:

> This case satisfies the policy behind FLSA collective actions and Congress's remedial intent by consolidating many small, related claims of employees for which proceeding individually would be too costly to be practical. *See Hoffmann-La Roche Inc. v. Sperling*, 110 S. Ct. 482 (1989) (noting that FLSA collective actions give plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling of resources")[.]

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 405 (6th Cir. 2017).

Defendants thus overemphasize *a* method by which the FLSA's purpose can be realized as *the only* method.

## D. Likelihood of Similar Situatedness

"[I]n response to Plaintiff's written discovery, Defendant[5] [states] (1) that it does not pay dancers a minimum wage because dancers are

---

[5] The Court notes that Defendants' Response is inconsistent in its use of the singular "Defendant" and the plural "Defendants." *See, e.g.,* ECF No. 68, PageID.1542 (e.g., "Defendants, Coliseum Detroit LLC and Lauri Saad ("Defendant"), [r]espectfully requests that this Honorable Court issue an Order[.]"). Clarity is important, however, because substituting "Saad" for "Defendant" in the quoted segment above gives the following: "[I]n response to Plaintiff's written discovery, *Saad* admitted (1) that *it* does not pay dancers a minimum wage because dancers are independent contractors not employees[,] (2) dancers keep their own tips, (3) dancers are not required to pay a portion of their tips to *Saad*'s employees and (4) Defendant Coliseum does not keep track of dancer's [sic] tips."

independent contractors, not employees[,] (2) dancers keep their own tips, (3) dancers are not required to pay a portion of their tips to Defendant's employees and (4) Defendant Coliseum does not keep track of dancer's [sic] tips." Defs.' Resp., ECF No. 68, PageID.1552–53, 1557 (citing ECF No. 67-2, PageID.1372–73).

Multiple dancers, including Plaintiff Jane Doe 4, have made identical allegations to the Court. ECF No. 15. Doe has alleged that Defendants should have classified its dancers as employees rather than independent contractors, and Defendants admit they classify every dancer as an independent contractor and do not pay them as employees. *See* ECF No. 68-2. Additionally, "Plaintiff alleges that Defendants paid for all facilities and marketing efforts, set prices for all VIP performances, required dancers to work specific shifts, fined dancers if they were late, fired, suspended, or disciplined dancers; did not require their dancers to have any specific skills or training; and held dancers' cabaret cards to prevent them from working at other clubs." ECF No. 24.

---

It may be true that dancers are not required to pay a portion of their tips to *Saad's* employees. But Defendants' drafting leaves open the possibility that the dancers may, in reality, be required to pay a portion of their tips to Coliseum Detroit LLC's employees. Likewise, the language permits the inference that while Defendant Coliseum may not track tips, Defendant Saad does. The Court has no way of knowing whether such ambiguous phrasing is intentional obfuscation or merely poor draftsmanship. Neither is acceptable; both may invite sanctions if repeated.

In opposition, Defendants present an affidavit signed by Saad on March 19, 2024, in which she refutes Doe's assertions. ECF No. 68-2. In it, Saad makes the following statements, among others:

- I have personal knowledge of the facts contained in this Affidavit and can testify as to them if called upon to do so.

- I am fully aware of Coliseum LLC's dancer policies because I was involved in creating those policies, and I am involved in implementing them and making sure they are followed.

- I am also involved in retaining dancers under the Performance Contract.

- The Coliseum LLC makes copies of dancers' cabaret cards when they sign our Performance Contract. This is to properly document that the dancer is over the age of 18 years and is properly licensed by the State of Michigan, and for no other reason.

- All the dancers [who] sign the Performance Contract do so freely and willingly.

- Performing as independent contractors allows the dancers to maximize their earning potential by having the ability to work peak times at the best clubs.

- Contrary to the allegations in [Paragraph 7] of [Doe's] declaration, the Coliseum LLC most certainly does not hold cabaret cards, nor do we prevent performers from working at any other establishment.

- Coliseum LLC does not suspend, fire, or discipline performers outside of the...arrangement...outlined in the Performance Contract[.]

- Coliseum LLC does not require performers to share tips with anyone and most certainly does not require them to share them with managers.

ECF No. 68-2, PageID.1574, 1577–79.

While the Court is not determining credibility at this stage, it must also consider Defendants' somewhat inconsistent description of Saad's involvement and knowledge as contained in their Motion to Stay Proceedings and Compel Arbitration (ECF No. 62), dated January 4, 2024. In that pleading, Defendants told the Court that "Defendant Owner [Saad] is rarely at the [Coliseum]. Her duties include dealing with insurance issues and various state and county agencies concerning liquor, food service, etc. She has no interaction with performers whatsoever and would be unable to identify any of them if asked. Defendant [Saad] and Husband have many businesses. As such, they rely on trusted staff to run the daily business operations of the various companies they own, including Detroit Coliseum[.]" ECF No. 62, PageID.1163. Defendants further stated in that pleading that Saad only recently learned of the existence of the performance contracts: "[O]n or about November 28, 2023[,] Defendant [Saad] went to the [Coliseum] to investigate further. She found blank performance contracts that contained an arbitration clause[;] [w]hen she asked about those forms, she was told performers sign them[.]" ECF No. 62, PageID.1163, 1166.

At summary judgment, Fed. R. Civ. P. 56(c)(4) requires an affidavit to be made "on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Therefore, "[f]irsthand knowledge or observation is essential and...the [affidavit] must be helpful in gaining a clear

understanding of the witness's testimony and a determination of the fact[s] at issue." *Miller v. Food Concepts Int'l, LP*, No. 2:13-CV-00124, 2017 WL 1163850, at \*12 (S.D. Ohio Mar. 29, 2017) (quoting *United States v. Olender*, 338 F.3d 629, 638 (6th Cir. 2003)). A nonmoving party cannot create a genuine issue of fact "simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn [statement]) without explaining the contradiction or attempting to resolve the disparity." *Miller*, 2017 WL 1163850, at \*7 (citing *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) and *Kelso v. City of Toledo*, 77 F. Appx. 826, 834 (6th Cir. 2003)).[6]

The *Clark* panel determined that the "strong likelihood" [s]tandard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). Although Defendants' motion to compel arbitration is not a sworn statement, it is a representation made to the Court by Defendants and defense counsel. If a party's affidavit—contradictory to a prior sworn

---

[6] Further, Fed. R. Civ. P. 56(h) notes that "[i]f satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions."

statement by that party—is insufficient to create a genuine issue of fact at summary judgment, it would be inappropriate to assign much weight to an inconsistent affidavit offered at the notice-facilitation stage of FLSA collective action litigation. And to the extent Saad relies on her own declaration, courts "routinely give [similar declarations] little or no weight at the conditional [approval] stage." *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 749 (M.D. Tenn. 2018).[7] Even so, "[a]t the notice stage, district courts within the Sixth Circuit typically do not…resolve factual disputes [or] make credibility determinations[.]" *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011).

Plaintiffs can meet their burden by demonstrating that their claims are unified by common theories of defendants' statutory violations. Doe sufficiently alleges that Defendants apply common practices and policies to all dancers and that these practices and policies violate the law.

---

[7] Similar declarations offered by defendants are often referred to as "'happy camper' declarations—so called because they tend to be from present or former employees handpicked by a defendant/employer[.]" *See Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 891–92 (S.D. Ohio 2016) ("[F]orm affidavits 'gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion.'"); *Tinsley v. Covenant Care Servs., LLC*, No. 1:14CV00026 ACL, 2016 WL 393577, at *9 (E.D. Mo. Feb. 2, 2016) ("Courts have afforded no weight to 'happy camper' affidavits at the conditional certification phase."); *Avendano v. Averus, Inc.*, No. 14-CV-01614-CMA-MJW, 2015 WL 1529354, at *7 (D. Colo. Mar. 31, 2015) (stating that courts "generally afford little importance to the so-called 'happy camper' [declarations] when ruling on conditional certification").

Plaintiff has demonstrated there is a strong likelihood she and the prospective putative collective members are similarly situated.

## III. NOTICE

Having determined that the facilitation of notice is appropriate and warranted, the Court now addresses the form and manner of the proposed notice. The conditional approval of an FLSA collective "simply allows the sending of court-approved written notice to employees who must then affirmatively opt into the litigation." *Polen*, 699 F. Supp. 3d at 632 (quoting *Taylor v. Pilot Corp.*, 697 F. App'x 854, 860 (6th Cir. 2017)).

Doe moves the Court for an order allowing Court-supervised notice of this action to be sent to the following collective:

> All current and former exotic dancers who worked at The Coliseum in Detroit, Michigan[,] at any time starting three years before the Original Complaint in this matter was filed and who did not opt-in to *Does v. Coliseum Bar & Grill, Inc.*, No. 17- 12212 (E.D. Mich. Filed July 6, 2017).

ECF No. 67, PageID.1336

The Court will modify the above language. It will, instead, approve notification to a collective of all current and former exotic dancers who have worked at The Coliseum in Detroit, Michigan, at or after June 29, 2020—the date on which Defendants assert "M&M agreed to sell its business assets (i.e., name, liquor license, furnishings), to Defendant Coliseum LLC[,] which is majority owned by Laurie Saad[.]" ECF No. 60, PageID.1093.

When a Complaint alleges willful violation of the FLSA, courts in this circuit have applied a three-year statute of limitations at the notice stage, recognizing that "[i]t is appropriate to allow a three-year look-back period in the notice where '[t]he absence of willful conduct is not established as a matter of law by the pleadings.'" *Benion v. Lecom, Inc.*, No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016) (Lawson, J.) (quoting *Colley v. Scherzinger Corp.*, No. 15-720, 2016 WL 1388853, at *4 (S.D. Ohio Apr. 6, 2016). Accordingly, the Court will apply a three-year statute of limitations.

Plaintiff's "proposed 90-day notice and opt-in provision is consistent with this district's timeframe for authorizing contact of potential plaintiffs by postal mail, email, or both." *Westley v. CCK Pizza Co.*, No. 18-13627, 2019 WL 2355597, at *5 (E.D. Mich. June 4, 2019) (Ludington, J.). Likewise, the issuance of notice via first-class mail and electronically via both email and text message is appropriate here. *See, e.g., Riley v. SK United Corp.*, No. 20-10577, 2021 WL 2010388, at *6 (E.D. Mich. May 20, 2021) (Borman, J.) ("Distribution of the [n]otice is permitted by email and text message, in addition to first-class mail.").

Plaintiff also requests that the Court allow issuance of a "reminder notice" to recipients at the halfway mark to facilitate the maximum number of opt-in plaintiffs. The Court is not convinced that such a notice is appropriate. The Supreme Court and the Sixth Circuit have "made clear…that [a] court's facilitation of notice must not 'in form or function'

19

resemble 'the solicitation of claims.'" *Clark*, 68 F.4th at 1010 (citing *Hoffmann-LaRoche*, 493 U.S. at 174).

## IV.   CONCLUSION

For the reasons provided above, Plaintiff's Renewed Motion for Issuance of Court Supervised Notice (ECF No. 67) is **GRANTED IN PART and DENIED IN PART**. The Court **CONDITIONALLY APPROVES** the following putative FLSA collective:

> All current and former exotic dancers who have worked at The Coliseum in Detroit, Michigan, at any time on or after June 29, 2020, and who did not opt-in to *Does v. Coliseum Bar & Grill, Inc.*, No. 17- 12212 (E.D. Mich. Filed July 6, 2017).

Plaintiff's counsel shall—at their expense—cause the Notice and Opt-In Consent Forms to be mailed, e-mailed, and texted to the collective.

Defendants are **ORDERED** to post the Notice in the Coliseum's dressing room and other conspicuous locations for the entirety of the 90-day notice period.

Defendants are **FURTHER ORDERED** to provide Plaintiff's counsel with photographic evidence of the postings one time per week during the posting period.

Defendants are **FURTHER ORDERED** to provide to Plaintiff's counsel, within fourteen (14) days, an electronic spreadsheet containing a roster of all individuals who fit the definition above, and that includes their full legal names, stage names, positions, dates of employment, last known home addresses, all personal email addresses, and all phone

numbers associated with each individual. The 90-day notice period will not begin until Plaintiff's counsel is in receipt of this information.

It is **FURTHER ORDERED** that Plaintiff's proposed Notice form and related materials are **APPROVED** pending substitution of the above conditionally-approved collective.

**SO ORDERED.**

Dated: September 30, 2024      s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE